UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

BROWARD DIVISION

CASE NO.: 1:14-cv-62475-UNGARO

AT LAW AND IN ADMIRALTY

PATRICIA PARKER,

    Plaintiff,

v.

MSC CROCIERE S.A., a foreign
Corporation,

    Defendant.
_____/

**<u>PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>**

The Plaintiff, PATRICIA PARKER ("Plaintiff" or "Mrs. Parker"), by and through her undersigned counsel, hereby moves, pursuant to Federal Rule of Civil Procedure 56, and S.D. Fla. L.R. 56.1, for an order granting Summary Judgment in her favor and against Defendant, MSC CROCIERE, S.A. ("MSC"), with respect to MSC's Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, Twelfth, Thirteenth, Fourteenth, Fifteenth, Sixteenth, Seventeenth and Nineteenth Affirmative Defenses.

**I.**     **<u>INTRODUCTION</u>**

On December 11, 2013, on deck 14 aboard the *Divina*, MSC employees mopped and allowed a thin, clear, evenly spread and camouflaged area of water to accumulate on a raised portion of the white ceramic style Bolidt flooring in the hallway which leads passengers to and from the indoor and outdoor pools. MSC did not post any warning signs to warn of the camouflaged area of water, did not block off the wet area or use any of its personnel to warn passengers of the camouflaged

area of water. Mrs. Parker walked through the hallway which leads passengers to and from the indoor and outdoor pools. When Mrs. Parker began walking up the raised portion of the white ceramic style Bolidt flooring her feet began slipping due to the thin, clear, evenly spread and camouflaged area of water. Mrs. Parker then fell forward and her right knee landed very hard on a raised metal door frame located in between a set of metal double doors. The Plaintiff suffered a fracture of her right patella due to the fall on MSC's metal doorframe which subsequently required surgical repair (two screws and metal wiring merged the two pieces of Plaintiff's right patella bone).

II. **S.D. Fla. L.R. 56.1 STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

1. On December 11, 2013, Mrs. Parker was a passenger aboard the MSC *Divina*. (*Deposition of MSC's Corporate Representative*, 41.16–41.21).[1]

1. On December 11, 2013, MSC owned and operated the MSC Divina. (*Deposition of MSC's Corporate Representative*, 40.7–40.12).

2. On December 11, 2013, MSC had a duty to provide safe walkways for its passengers aboard the Divina. (*Deposition of MSC's Corporate Representative*, 31.1–31.7).

3. On December 11, 2013, MSC employees were responsible for cleaning and maintaining deck 14 aboard the Divina. (*Deposition of MSC's Corporate Representative*, 52.18–53.1).

4. On December 11, 2013, no third party or outside company was responsible for cleaning or maintaining deck 14 aboard the *Divina*. (*Deposition of MSC's Corporate Representative*, 53.2–53.6).

5. On December 11, 2013, no third party or outside company was responsible for making sure

---

[1] Antonino Cuccaro was designated as MSC's corporate representative on every matter in which examination was requested under Fed. R. Civ. P. 30(b)(6). (*Deposition of MSC's Corporate Representative*, 23.13–24.19).

2

the floors on deck 14 aboard the *Divina* were dry. (*Deposition of MSC's Corporate Representative*, 53.8–53.11).

6. **MSC has no evidence or information which establishes that Mrs. Parker caused the subject accident**. (*Deposition of MSC's Corporate Representative*, 85.14–85.16).

7. **MSC has no evidence or information which establishes that Mrs. Parker contributed to the subject accident**. (*Deposition of MSC's Corporate Representative*, 85.17–85.20).

8. **MSC is not aware of any witnesses to the subject accident**. (*Deposition of MSC's corporate representative*, 62.8–62.10, 65.8–65.10, 84.22–84.24; *Defendant's Responses to Plaintiff's Interrogatories*, Response to Interrogatory No. 7).

9. MSC's safety officer Marco Colonna conducted an investigation into the subject accident after it occurred. (*Deposition of MSC's Corporate Representative*, 26.17–26.24; *Defendant's Responses to Plaintiff's Interrogatories*, Response to Interrogatory No. 7).

10. MSC's safety officer Marco Colonna did not witness the subject accident. (*Deposition of MSC's Corporate Representative*, 56.6–56.9).

11. MSC's safety officer Marco Colonna arrived at the accident after the subject accident occurred. (*Deposition of MSC's Corporate Representative,* 56.10–56.15).

12. MSC's safety officer Marco Colonna did not speak with any MSC crewmembers, or record any witness statements in reference to the subject accident. (*Deposition of MSC's Corporate Representative*, 61.23–62.2, 62.21–62.25).

13. MSC has no idea which crewmembers were assigned to, or were in the area of the subject accident because it does not keep documentation. (*Deposition of MSC's Corporate Representative*, 86.11–86.14, 88.4–88.9; *Defendant's Supplemental Responses to Plaintiff's Interrogatories*, Supplemental Response to No. 9).

14. The only statement made by Mrs. Parker to an MSC crewmember regarding the subject accident was a written "passenger injury statement." (*Deposition of MSC's Corporate Representative*, 60.17–60.21; *Defendant's Responses to Plaintiff's Interrogatories,* Response to No. 6).

15. Mrs. Parker did not make any oral statements to any MSC crewmembers regarding the circumstances of the subject accident. (*Deposition of MSC's Corporate Representative*, 58.13–58.15, 60.17–60.21; *Defendant's Responses to Plaintiff's Interrogatories,* Response to No. 6).

16. MSC's safety officer Marco Colonna documented in his accident report that the area of the subject flooring was dry at the time of his arrival – which was after the subject accident. (*Deposition of MSC's Corporate Representative*, 83.5–83.8).

17. The only evidence relied upon by MSC to establish that the subject area of flooring was dry is the opinion testimony of safety officer Marco Colonna. (*Deposition of MSC's Corporate Representative*, 115.21–116.5).

18. MSC's safety officer Marco Colonna speculated in his accident report that Mrs. Parker tripped and caused her own injuries. (*Deposition of MSC's Corporate Representative*, 81.7–81.12, 83.5–83.8).

19. Mrs. Parker has **never** told any MSC crewmembers that she tripped and fell, causing her own injuries. (*Deposition of MSC's Corporate Representative*, 83.17–84.3, 84.11–84.13, 85.6–85.8).

20. The only evidence relied upon by MSC to establish that Mrs. Parker tripped and fell is the speculative opinion of its safety officer Marco Colonna, who was not present when the subject accident occurred. (*Deposition of MSC's Corporate Representative*, 85.21–85.25).

21. **MSC is assuming that Mrs. Parker tripped and fell.** (*Deposition of MSC's corporate*

4

*representative*, 84.19 – 84.21).

22. On December 11, 2013, following Mrs. Parker's accident, x-rays taken in the MSC *Divina* infirmary indicated that she suffered a fractured right patella as a result of the subject accident. (*Deposition of MSC's Corporate Representative*, 72.11–76.2).

23. At the time of Mrs. Parker's accident there were not any warning signs in the area which warned Mrs. Parker, or other passengers about the thin, clear, evenly spread and camouflaged area of water which caused Mrs. Parker's accident. (*Deposition of MSC's Corporate Representative*, 104.11–104.18; *Deposition of Patricia Parker*, 101.15–101.19, 101.21–102.2, 104.8–104.15, 175.19–176.4, 181.6–181.8; *Deposition of Lauren Parker*, Volume II 251.8–251.17; *Deposition of Russ Parker*, 246.10–246.15).

24. At the time of Mrs. Parker's accident there were not any MSC crewmembers in the area of the subject accident who warned her, or other passengers about the thin, clear, evenly spread and camouflaged area of water which caused Mrs. Parker's accident. (*Deposition of Patricia Parker*, 104.8–104.15).

25. At the time of her accident, Mrs. Parker was carefully looking forward and down. (*Deposition of Patricia Parker*, 100.18–100.21, 101.2–101.5).

26. Mrs. Parker was not able to see the subject thin, clear, evenly spread and camouflaged area of water prior to her injury occurring. (*Deposition of Patricia Parker*, 97.17–97.19, 100.24–101.1, 102.21–103.1, 220.17–220.23; *Plaintiff's Supplemental Answers to Defendant's Interrogatories*, Response to No. 7).

27. Once Mrs. Parker walked over this thin, clear, evenly spread and camouflaged area of water her left foot began slipping, which caused Mrs. Parker to lose her balance and fall forward. Mrs. Parker's right knee landed on a raised metal doorframe, causing her patella to fracture.

5

(*Deposition of Patricia Parker*, 94:18–95:4; 96:9–96:13; 176.15–177.1; *Plaintiff's Supplemental Answers to Defendant's Interrogatories*, Response to No. 7).

28. Plaintiff's daughter Lauren Parker, observed an MSC crewmember mopping the subject flooring approximately ten to twenty minutes before the subject accident. (*Deposition of Lauren Parker*, Volume II 155.9–155.17, 250.19–251.7, 256.13–256.22).

29. Lauren Parker arrived at the scene of the accident within minutes of Patricia Parker's injury. (*Deposition of Patricia Parker*, 177.12–177.15).

30. Lauren Parker inspected the subject white flooring after Mrs. Parker identfieid that she had slipped on it. (*Deposition of Patricia Parker*, 177.16–178.4; *Deposition of Lauren Parker*, 253.5–253.9).

31. Lauren bent down over the subject flooring and noticed a thin, clear, evenly spread and camouflaged area of water on the subject flooring. (*Deposition of Lauren Parker*, 249.16 – 250.1; *Deposition of Patricia Parker*, 178.1–178.10).

32. Lauren Parker was not able to see the thin, clear, evenly spread and camouflaged area of water from a standing position. (*Deposition of Lauren Parker*, 252.4–252.10).

33. The thin, clear, evenly spread and camouflaged area of water blended in with the subject flooring. (*Deposition of Lauren Parker*, 252.12–252.14).

34. On December 11, 2013 MSC's shipboard doctor told Mrs. Parker that she should disembark the *Divina* in Jamaica (a foreign country) because she needed to have corrective surgery for her injury. However, MSC's doctor told Mrs. Parker that if she was his wife, he would recommend that she fly back to the United States for medical treatment. (*Deposition of Patricia Parker*, 108.24 – 109.7).

35. On December 12, 2013 Mrs. Parker disembarked the *Divina* in Jamaica, was transported

to the nearest airport, and traveled by plane to Orlando, Florida. (*Deposition of Patricia Parker*, 109.8–109.25).

36. Mrs. Parker arrived in Orlando, Florida at approximately 3:00 a.m. on December 13, 2013. (*Deposition of Russ Parker*, 177.15–178.8).

37. Mrs. Parker was admitted to the Halifax Medical Center Hospital in Flagler Beach, Florida on December 13, 2013. Mrs. Parker underwent surgery to repair her fractured right patella on December 14, 2013. (*Deposition of Patricia Parker*, 112.11–112.21).

38. Prior to the subject accident on December 11, 2013, Mrs. Parker did not have any problems or limitations with her right knee. (*Deposition of Patricia Parker*, 187.4–187.12).

## MEMORANDUM OF LAW

### III.   Standard of Review–Fed. R. Civ. P. 56

Summary judgment should be granted if "there is no issue as to any material fact and the moving party is entitled to judgment as a matter of law". Fed.R.Civ.P. 56(c). An issue of fact is material if it is a legal element of the claim or defense under the applicable substantive law which might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986). However, issues of fact are genuine only if a reasonable jury considering the evidence presented could find for the non-moving party. *Id.* The non-moving party may not defeat a properly supported motion by resting upon the "mere existence of some alleged factual dispute between the parties". *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2547, 2553 (1986). The moving party may meet its burden of showing an absence of a material fact by demonstrating "that there is an absence of evidence to support the non-moving party's case". *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2554. If the non-moving party fails to present substantial

7

evidence of pretext or to make a sufficient showing of a disputed material issue of fact, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552.

"A defendant seeking to have the jury apportion its fault with that of a non-party has the burden to . . . prove its entitlement to that benefit." *Clark v. Polk County*, 753 So.2d 138, 142 (Fla.2d DCA 2000). Defendant has the burden to come forward with evidence sufficient to support its affirmative defenses in response to a summary judgment motion directed to its affirmative defenses. *Blue Cross and Blue Shield of Ala. v. Weitz*, 913 F.2d 1544, 1552 (11th Cir.1990) (defendant has the burden of making a showing that an affirmative defense is applicable); *Thorsteinsson v. M/V Drangur*, 891 F.2d 1547, 1550 (11th Cir.1990) (defendant bears the burden of proof on his or her affirmative defense). Furthermore, Defendant cannot satisfy its burden of proof by simply pointing out deficiencies in Plaintiff's motion for summary judgment. *Spellman v. RSC Equipment Rental, Inc.*, 2010 WL 450400 *5 (M.D. Fla. 2010). Defendant must affirmatively produce evidence of its own. *See* Fed.R.Civ.P. 56(e)(2).

## **LEGAL ARGUMENT IN SUPPORT OF SUMMARY JUDGMENT**

### **IV.  Plaintiff is entitled to Summary Judgment on Defendant's Second, Third, Seventh, Ninth and Thirteenth Affirmative Defenses (Comparative Fault)**

MSC has failed to come forward with a scintilla of evidence after adequate time for discovery to support any allegations of comparative negligence on Mrs. Parker's part. The Rule 30(b)(6) corporate representative produced by MSC, safety officer Antonino Cuccaro, admitted that <u>MSC has no evidence</u> which establishes that (1) Mrs. Parker caused the subject accident; or (2) Mrs. Parker contributed to the subject accident:

> Q: **Okay. Do you have any evidence to indicate that my client caused this accident?**
> A: **No.**
> Q: **Okay. Do you have any evidence to indicate that my client contributed to this accident?**

> A: **No.**

*See (Deposition of MSC's Corporate Representative*, 85.14–85.20). Further, MSC's corporate representative admitted that MSC is <u>assuming</u> that Mrs. Parker tripped and fell:

> Q: **So MSC is assuming that my client tripped and fell, correct?**
> A: **Correct.**

*See (Deposition of MSC's Corporate Representative*, 84.19–84.21). Moreover, MSC is not aware of any witnesses to the subject accident.

During deposition (and through supplemental interrogatory responses) Mrs. Parker identified that she was carefully looking forward and down at the time of the subject accident. Mrs. Parker testified that she was not able to see the thin, clear, evenly spread and camouflaged area of water prior to her injury occurring. Further, Lauren Parker, who arrived minutes after the subject accident occurred, testified that she was not able to see the thin, clear and evenly spread area of water from a standing position. In order to see the thin, clear and evenly spread area of water which caused Mrs. Parker's injury, Lauren had to bend down and get close to the floor surface because the thin layer of water blended in with the floor. Furthermore, there were not any warnings (neither through signage or MSC crewmembers) which warned Mrs. Parker about the thin, clear, evenly spread and camouflaged area of water prior to her injury occurring.

Any assertion by MSC that Mrs. Parker tripped and fell is based upon pure speculation. Speculative opinion testimony is not admissible under the Federal Rules of Evidence. *See* Fed. R. Evid. 602; *XL Ins. America, Inc. v. Ortiz*, 673 F.Supp.2d 1331, 1343 (S.D. Fla. 2009) (finding a witness' speculative testimony inadmissible because the witness was not present when the events occurred). Further, **guesses or speculation which raise merely a conjecture or possibility are not sufficient to create an inference of fact for consideration on summary judgment**. *Argonaut Midwest Ins. Co. v. McNeilus Truck and Mfg., Inc.*, No. 1:11 – CV – 3495 – TWT, 2013 WL

504897, at *2 (N.D. Ga. Feb. 8, 2013) (**granting plaintiff's motion for summary judgment on defendant's affirmative defense of contributory and comparative negligence where defendant could not produce any evidence other than speculation to support its affirmative defense**). Therefore, since the record lacks support for MSC's Second, Third, Seventh, Ninth and Thirteenth Affirmative Defenses, the Plaintiff's Motion for Summary Judgment should be granted.

### V. Plaintiff is entitled to Summary Judgment on Defendant's Fourth Affirmative Defense

MSC has failed to come forward with a scintilla of evidence after adequate time for discovery to support any allegations that the "incident and injuries alleged by the Plaintiff, if any, were the result of superseding, intervening, and/or unforeseeable causes from which the [sic] MSC had no duty to protect Plaintiff." MSC's Fourth Affirmative Defense is completely unsupported by the record. Therefore, the Plaintiff's Motion for Summary Judgment as to MSC's Fourth Affirmative Defense should be granted, as there is no evidence which would establish that Mrs. Parker's injuries were caused by "superseding, intervening, and/or unenforceable causes."

### VI. Plaintiff is entitled to Summary Judgment on Defendant's Sixth Affirmative Defense

MSC has failed to come forward with a scintilla of evidence after adequate time for discovery to support its allegations that "the damages allegedly suffered by the Plaintiff were not the result of any act or omission on the part of MSC, but were caused by Plaintiff's pre-existing injuries and/or trauma or illness suffered by the Plaintiff during her lifetime." There is absolutely no evidence in the record which indicates that Mrs. Parker suffered a fractured right patella <u>prior to</u> the subject accident on December 11, 2013. The record clearly establishes that Mrs. Parker suffered a fractured right patella on December 11, 2013, as a direct result of the negligence of MSC's crewmembers. Therefore, the Plaintiff's Motion for Summary Judgment as to MSC's Sixth Affirmative Defense should be granted, since there is **absolutely no evidence** which would

establish that Mrs. Parker's fractured right patella occurred prior to the subject accident on December 11, 2013.

**VII. <u>Plaintiff is entitled to Summary Judgment on Defendant's Eighth Affirmative Defense</u>**

MSC has failed to come forward with a scintilla of evidence after adequate time for discovery to support any allegations that the subject dangerous condition was "open and obvious." First, based on Colonna's (who arrived after the accident) statement in MSC's accident report, MSC has taken the position that the subject floor was dry at the time of the subject accident. So, MSC has not admitted that the subject floor was wet at the time of the subject accident. Therefore, MSC has not accepted the allegations in the complaint as true. *See Losada v. Norwegian (Bahamas) Ltd.*, 296 F.R.D. 688, 690 (S.D. Fla. 2013) (<u>stating that an affirmative defense is a defense which admits the essential facts of a complaint and sets up other facts in justification or avoidance</u>).

In its responses to the Plaintiff's interrogatories MSC stated that the "metal threshold at issue is open and obvious." *See Defendant's Responses to Plaintiff Interrogatories*, Response to No. 2. However, through the complaint, pleadings, discovery and depositions the Plaintiff has identified that the alleged dangerous condition which caused the subject accident was a thin, clear, evenly spread and camouflaged area of water created by an MSC crewmember. Therefore, MSC's contention that the "metal threshold at issue is open and obvious" is inapposite.

Mrs. Parker testified that she was carefully looking forward and down at the time of the subject accident. Mrs. Parker testified that she was not able to see the thin, clear, evenly spread and camouflaged area of water prior to her injury occurring. Further, Lauren Parker, who arrived minutes after the subject accident occurred, testified that she was not able to see the thin, clear and evenly spread area of water from a standing position. In order to see the thin, clear and evenly

11

spread area of water which caused Mrs. Parker's injury, Lauren had to bend down and get close to the floor surface because the thin layer of water blended in with the floor.

Further, during discovery MSC has identified **two** employees who have knowledge regarding the subject accident; (1) safety officer Marco Colonna; and (2) the shipboard doctor. *See Defendant's Responses to Plaintiff's Interrogatories*, Response to No. 5. As indicated above, Marco Colonna noted that the subject flooring was dry when he arrived. During discovery MSC did not produce any evidence or information from the shipboard doctor which would indicate that he/she had knowledge regarding the circumstances surrounding Mrs. Parker's accident, other than providing medical treatment to Mrs. Parker in the *Divina* infirmary. **MSC has not produced any evidence or information which establishes that the thin, clear and evenly spread area of water which caused Mrs. Parker's accident was "open and obvious," despite having seven months to conduct discovery**. Therefore, since the record lacks support for MSC's Eighth Affirmative Defense, the Plaintiff's Motion for Summary Judgment should be granted.

## VIII. Plaintiff is entitled to Summary Judgment on Defendant's Tenth and Twelfth Affirmative Defenses (*Fabre* defense)

MSC's affirmative defenses which allege that third parties (who are not parties to this lawsuit) are responsible for Mrs. Parker's injuries are unfounded, as there can be no apportionment of fault to non-parties in a maritime tort case, and MSC has failed to produce a scintilla of evidence after adequate time for discovery to support any allegations that third parties are responsible for Mrs. Parker's injuries. The Eleventh Circuit has stated "the general rule in maritime law is that a plaintiff may sue any defendant for the full amount of damages for an indivisible injury that the defendant's negligence was a substantial factor in causing, even if the concurrent negligence of others contributed to the incident." *Sands v. Kawasaki Motors Corp. U.S.A.*, 513 Fed.Appx. 847, 854–55 (11th Cir. 2013). Further, this Court has held that under federal maritime law, plaintiff may obtain

judgment for the full amount from any and all tortfeasors under the doctrine of joint and several liability. *Groff v. Chandris, Inc.*, 835 F.Supp. 1408, 1409 (S.D. Fla. 1993) (**Judge Moore refusing to permit the defense to have the jury determine the percentage of liability or fault of a non-party in a maritime case**).

Additionally, MSC admitted during deposition of its corporate representative that it owned and operated the MSC *Divina* on December 11, 2013. Further, MSC's employees were solely responsible for cleaning and maintaining deck 14 aboard the *Divina*. During deposition of its corporate representative MSC admitted that on December 11, 2013, no third party or outside company was responsible for keeping the floors dry on deck 14 aboard the *Divina*. Therefore, since the *Fabre* defense is inapplicable in maritime tort cases, and because MSC has presented no evidence to support such a defense even if it were applicable, the Plaintiff's Motion for Summary Judgment should be granted as to MSC's Tenth and Twelfth Affirmative Defenses.

## IX. Plaintiff is entitled to Summary Judgment on Defendant's Eleventh Affirmative Defense

MSC has failed to come forward with a scintilla of evidence after adequate time for discovery to support any allegations that Mrs. Parker's choice to undergo surgery in the United States three days after the subject accident exacerbated her injuries. On December 11, 2013 MSC's shipboard doctor advised Mrs. Parker to seek medical treatment in the United States. The next day, Mrs. Parker disembarked the *Divina* and traveled by plane to Orlando, Florida. Mrs. Parker arrived in Orlando, Florida during the early morning hours of December 13, 2013. Later that day, Mrs. Parker was admitted to the hospital. Mrs. Parker underwent corrective surgery the following day (December 14, 2013). MSC has failed to present any evidence which establishes that Mrs. Parker's choice to have corrective surgery in the United States three days after the subject accident

13

exacerbated her injuries. Therefore, the Plaintiff's Motion for Summary Judgment should be granted as to MSC's Eleventh Affirmative Defense.

## X. Plaintiff is entitled to Summary Judgment on Defendant's Fourteenth Affirmative Defense

MSC has failed to come forward with a scintilla of evidence after adequate time for discovery to support any allegations that it did not have notice of the thin, clear, evenly spread and camouflaged area of water which caused Mrs. Parker's injury. Approximately ten to twenty minutes before Mrs. Parker's accident, Lauren Parker observed an MSC crewmember mopping the white flooring where Patricia Parker's accident would occur less than thirty minutes later. Further, the MSC crewmember did not post any warning signs in the area while he was mopping, or when mopping was completed. When Lauren Parker arrived at the accident scene ten to twenty minutes later she observed the subject flooring to have a thin, clear, evenly spread area of water covering it. The record has established that MSC's crewmember created this dangerous condition, and, therefore, MSC had notice of the thin, clear, evenly spread and camouflaged area of water left by its crewmember. Consequently, the Plaintiff's Motion for Summary Judgment should be granted as to MSC's Fourteenth Affirmative Defense.

## XI. Plaintiff is entitled to Summary Judgment on Defendant's Fifteenth Affirmative Defense

MSC has failed to come forward with a scintilla of evidence after adequate time for discovery to support any allegations that it warned Mrs. Parker about the thin, clear, evenly spread and camouflaged area of water prior to her accident. **MSC's corporate representative admitted that MSC is not aware of any evidence which establishes warning signs were placed in the area of the subject accident at the time it occurred**. Further, Patricia Parker testified that there were no warning signs, or crewmembers warning her away from the subject flooring at the time of the

accident. Furthermore, Russ Parker and Lauren Parker have both testified that there were not any warning signs in the area of the subject accident when they arrived minutes later. Therefore, the Plaintiff's Motion for Summary Judgment should be granted as to MSC's Fifteenth Affirmative Defense, as it has failed to present any evidence which establishes that Mrs. Parker was warned about the thin, clear, evenly spread and camouflaged area of water prior to her accident.

### XII. Plaintiff is entitled to Summary Judgment on Defendant's Seventeenth Affirmative Defense

MSC's Seventeenth Affirmative Defense states "MSC asserts that Plaintiff's Complaint fails to state a claim upon which relief may be granted." This is not a legally recognizable defense. *See U.S. v. Halifax Hosp. Medical Center*, No. 6:09-cv-1002-Orl-31TBS, 2013 WL 6017329, at *12 (M.D. Fla. Nov. 13, 2013) (**granting summary judgment as to defendant's first affirmative defense "failure to state a claim upon which relief may be granted" and holding that defendant's first affirmative defense is not available as a matter of law**). Therefore, the Plaintiff's Motion for Summary Judgment should be granted as to MSC's Seventeenth Affirmative Defense.

### XIII. Plaintiff is entitled to Summary Judgment on Defendant's Nineteenth Affirmative Defense

MSC's Nineteenth Affirmative Defense states "MSC asserts that as set forth in the Passenger Ticket Contract, because the Plaintiff's claims are governed by admiralty/maritime law and/or ther [sic] court's admiralty jurisdiction, the Plaintiff has no right to a jury trial and all disputes are to be tried without a jury." This is not a legally recognized Affirmative Defense, and, therefore, the Plaintiff's Motion for Summary Judgment as to MSC's Nineteenth Affirmative Defense should be granted.

## **CONCLUSION**

This Honorable Court should issue an Order granting Summary Judgment in Plaintiff's favor and against MSC with respect to its Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, Twelfth, Thirteenth, Fourteenth, Fifteenth, Sixteenth, Seventeenth and Nineteenth Affirmative Defenses, because after adequate time for discovery MSC has no facts or evidence supporting the above-mentioned affirmative defenses.

Respectfully Submitted,

  /s Brett Sager
Brett D. Sager, Esq. (FBN 91636)
bsager@hickeylawfirm.com
John H. Hickey, Esq. (FBN 305081)
hickey@hickeylawfirm.com
**Hickey Law Firm, P.A.**
1401 Brickell Avenue, Suite 510
Miami, FL  33131
Phone: (305) 371-8000
Fax: (305) 371-3542
*Attorneys for the Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 21, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

    _/s/ Brett D. Sager_____
Brett D. Sager, Esq.
FBN 91636
bsager@hickeylawfirm.com
**HICKEY LAW FIRM, P.A.**
1401 Brickell Avenue
Miami, FL 33131-3504
Tel. (305) 371-8000
Fax (305) 371-3542
*Attorney for Plaintiff*

**SERVICE LIST**
**Parker v. MSC Crociere, S.A.**
**Case No.:** 0:14-cv-62475-UU
**United States District Court, Southern District of Florida**

| | |
|---|---|
| **John H. Hickey, Esq.** <br> hickey@hickeylawfirm.com <br> **Brett D. Sager, Esq.** <br> BSager@hickeylawfirm.com <br> HICKEY LAW FIRM, P.A. <br> 1401 Brickell Avenue <br> Miami, FL 33131-3504 <br> Tel. (305) 371-8000 <br> Fax (305) 371-3542 <br> *Attorneys for Plaintiff* | **Jeffrey B. Maltzman, Esq.** <br> jeffreym@maltzmanpartners.com; <br> **Steve Holman, Esq.** <br> steveh@maltzmanpartners.com; and to <br> **Rafaela P. Castells, Esq.** <br> rafaelac@maltzmanpartners.com; <br> MALTZMAN & PARTNERS, P.A. <br> 55 Miracle Mile, Suite 230 <br> Coral Gables, FL 33134 <br> *Attorneys for Defendant* <br> *Method of service: electronic* |